IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

BRENDA HUBBARD, )
 )
        Plaintiff, )
 )
v. ) Case No. CIV-17-81-D
 )
ORAL AND MAXILLOFACIAL )
ASSOCIATES, LLC, )
 )
        Defendant. )

**O R D E R**

Before the Court is Defendant Oral and Maxillofacial Associates, LLC's Motion for Summary Judgment [Doc. No. 30], filed pursuant to Fed. R. Civ. P. 56. Defendant seeks a judgment in its favor on all of Plaintiff's claims: age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 101 *et seq.*; gender discrimination in violation of Title VII of the Civil Rights Act of 1964 as amended ("Title VII"), 42 U.S.C. § 2000e *et seq.*; retaliatory discharge in violation of Oklahoma public policy related to health and safety; and breach of an employment contract.[1] Plaintiff Brenda Hubbard has responded in opposition to the Motion, which is fully briefed.

---

[1] Plaintiff filed suit in state court, casting her age and gender claims as ones brought under Oklahoma's anti-discrimination statutes. However, Plaintiff also alleged the exhaustion of federal administrative remedies and a timely suit under the resulting EEOC notice. Defendant removed the case to federal court on the ground that Plaintiff was actually bringing federal claims. Plaintiff did not file a timely motion for remand, or otherwise dispute this contention. The case has proceeded as one involving federal, rather than state, discrimination claims.

## Standard of Decision

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for either party. *Id.* at 255. All facts and reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Id.*

The movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If the movant carries this burden, the nonmovant must go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see* Fed. R. Civ. P. 56(c)(1)(A). The question to be decided is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *See Anderson*, 477 U.S. at 251-52.

## Defendant's Motion

Defendant seeks summary judgment on Plaintiff's age and gender discrimination claims under the familiar burden-shifting framework of *McDonnell Douglas Corp. v.*

*Green*, 411 U.S. 792 (1973). Defendant first asserts that Plaintiff cannot establish a *prima facie* case of age discrimination because she was replaced by an employee who was not significantly younger. Proceeding to the next step of the *McDonnell Douglas* analysis for both discrimination claims, Defendant asserts that Plaintiff cannot show its legitimate, non-discriminatory reasons for terminating her employment were pretextual. With regard to Plaintiff's public policy tort claim, Defendant argues that Plaintiff has failed to identify a clear and compelling public policy that was violated by the termination of her employment, and that she cannot show a causal connection between any report of a safety violation and the termination decision. Finally, Defendant contends Plaintiff received all compensation and payments to which she was entitled under her employment contract.

**Plaintiff's Response**

Plaintiff disputes Defendant's contentions regarding her discrimination claims. She presents no argument, however, regarding her public policy tort claim. Plaintiff does not identify any statutory or decisional law implicated by the alleged safety violations as required by *Burk v. K-Mart Corp.*, 770 P.2d 24, 28 (1989), and its progeny, nor does she present any facts that would link a safety report with the termination of her employment.[2] Therefore, the Court finds as a matter of law that Plaintiff cannot prevail on the retaliatory

---

[2] Although Plaintiff cites a statute in her pleading that prescribes grounds for discipline of dentists (Okla. Stat. tit. 59, § 328.32), she refers in her summary judgment brief only to a public policy regarding matters "affect[ing] the health and safety of patients and employees." *See* Pl.'s Resp. Br. at 15. This general statement stands in stark contrast to legal mandates that the Oklahoma Supreme Court has found to be sufficient to support a retaliatory discharge claim. *See, e.g.*, *Moore v. Warr Acres Nursing Center, LLC*, 386 P.3d 894, 901-05 (Okla. 2016) (health regulations regarding infections disease control, sanitary practices, and nursing standards established clear policy that prohibited discharge of registered nurse for not working while infected with influenza).

discharge tort claim asserted in her pleading. *See* Pet. [Doc. No. 1-1], ¶¶ 26-30. at 4-5. Defendant is entitled to summary judgment on this claim.

Plaintiff's breach of contract claim was previously addressed in the Court's Order of September 4, 2018, denying her motion for summary judgment on a claim seeking an additional salary payment. The undisputed facts now presented by Defendant regarding this claim are the same facts stated in the September 4 Order, and the reasons why Plaintiff's salary claim fails are stated in that Order. *See* 9/4/18 Order [Doc. No. 43] at 5. The Court adopts those findings here, and addresses in this Order only Plaintiff's breach of contract claim seeking an additional lumpsum payment upon termination for accrued paid time off ("PTO").

## Statement of Undisputed Facts [3]

Defendant is a limited liability company owned by a group of oral and maxillofacial surgeons who exercise joint control over business matters. By unanimous decision, Plaintiff was hired for the position of practice administrator under a written agreement beginning December 3, 2012. Plaintiff was then 54 years old, and Defendant's ownership was comprised of five doctors, four of whom were over 40 years of age (ranging from 48 years to 69 years).

The Contract had an initial term of one year but "automatically renew[ed] for successive one-year terms . . . unless either party notifie[d] the other in writing at least

---

[3] This statement includes material facts that are supported by the record and not opposed in the manner required by Rule 56(c)(1) and LCvR56.1(d). All facts properly presented by a party and not specifically controverted by an opponent are deemed admitted, pursuant to Rule 56(e)(2) and LCvR56.1(e).

ninety (90) days in advance of the expiration of the Initial Term or any successive term that it will not be renewed." *See* Def.'s Mot. Summ. J., Ex. 9 [Doc. No. 30-9] (hereafter, the "Contract"), ¶ 2.[4] On August 25, 2016, Defendant gave Plaintiff written notice that its owners (also known as its board of managers) had decided not to renew the Contract, and "unless earlier terminated as provided in the [Contract], your employment agreement will terminate at 5:00 p.m. on December 2, 2016." *See* Def.'s Mot. Summ. J., Ex. 24 [Doc. No. 30-24]. Plaintiff was not terminated before December 2, 2016, and her employment ended on that date. The non-renewal decision was made by a consensus of the owners, a group then comprised of six doctors who were all 40 years of age or older (ranging from 40 years to 69 years).[5] Plaintiff was 58 years old at the time.

During the Contract, Plaintiff received mixed reviews of her performance. Plaintiff's 90-day performance evaluation listed three strengths: personality; willingness to work hard; and human resources knowledge. *See* Def.'s Ex. 10 [Doc. No. 30-10] at 1.[6] The evaluation listed four areas for improvement, with specific recommendations in each

---

[4] Plaintiff also provided a copy of the Contract as an exhibit to her motion for summary judgment [Doc. No. 25-1]. Both copies are identical.

[5] The oldest doctor in the hiring group had retired, and two younger doctors had joined. Plaintiff contends the relevant age-related fact is the age of Defendant's employees, not its doctors; she alleges the doctors wanted to surround themselves with "pretty young women." See Pl.'s Resp. Br. [Doc. No. 39] at 14, ¶ 21. However, this allegation is supported only by the testimony of one doctor that his female assistants were "20 somethings." *See* Montgomery Dep. [Doc. No. 39-1], 26:16-27:14. The "clinical leader" in the Norman office where he worked (one of four offices) was in her "early 40s." Id. 26:22-24; 27:21-22.

[6] Where, as here, an exhibit contains documents that lack pagination, the pinpoint citation uses the page number supplied by the ECF system.

area: communication; interaction with all Defendant's offices; preparation for board meetings; and financial reporting. *Id*. at 1-2.

Defendant presents a "Disciplinary Action Form" for Plaintiff dated April 4, 2014. It cites failures by Plaintiff to follow instructions of a partner and to take ownership of mistakes and, in a handwritten note, states she "did not communicate as requested by a Partner. See email." *See* Def.'s Ex. 11 [Doc. No. 30-11] at 1. Attached to the form is a collection of documents that are not explained, but included is a printed copy of emails exchanged between Dr. Vincent Montgomery and Plaintiff in late March 2014, which Dr. Montgomery shared with other doctors on April 1, 2014. Dr. Montgomery stated in his message to the doctors that he found Plaintiff's poor communication with him to be an unacceptable performance issue that he intended to address in a meeting with her. Plaintiff admits the documents include handwritten notes of a meeting she had with Drs. Kent Cohenour and Scott Searcey, but she denies disciplinary action was taken against her. A space on the form for the employee's signature is blank. Defendant provides no evidence of a meeting about, or delivery of, the disciplinary action form.

Plaintiff received a 2014 performance review consisting of numerical scores on a written appraisal form. Six doctors rated Plaintiff on a scale of 1 to 5 in each of eight "Core Competencies." *See* Def.'s Ex. 12 [Doc. No. 30-12] at 1. The ratings signified: 1, Needs Improvement; 2, Below Expectations; 3, Meets Expectations; 4, Exceeds Expectations; and 5, Exceptional or Excellent. *Id*. at 3. Plaintiff scored an overall average score of 3.3 for her performance during the review period. The average ratings given by individual doctors ranged from a low of 3.0 (by "SS") to a high of 3.9 (by "DW"). The average ratings in

each competency area ranged from a low of 2.8 for communication to a high of 3.8 for teamwork/cooperation/attitude and integrity. The individual ratings across all competency areas ranged from 2's or 2.5's given by three doctors in three areas to 4's (or above) from every doctor in at least one area.[7]

Plaintiff received a 2015 performance review using the same appraisal form with seven doctors participating; some doctors also provided individual comments.[8] *See* Def.'s Ex. 14 [Doc. No. 30-14] at 2, 3. This review resulted in a similar, but slightly lower, overall average score of 3.1, with average ratings by individual doctors ranging from a low of 2.5 to a high of 4.1. The average ratings in each competency area ranged from lows of 2.8 for strategic organization/planning and 2.9 for communication to highs of 3.4 for judgment/decision making and 3.6 for integrity. The individual ratings across all competency areas ranged from 2's or 2.5's given by four doctors in five areas to 4's (or above) in at least one area by all but two doctors.

During 2016, Plaintiff had conflicts with two owners over administrative issues. In April 2016, Dr. Samur asked Plaintiff to provide him with certain employee payroll information and to give him access to employees' personnel files, and in August 2016, he sought access to Defendant's electronic payroll system so he could verify the information

---

[7] Following the review, Plaintiff was asked to prepare an individual development plan to improve her performance. In Dr. Montgomery's view, Plaintiff did not submit a sufficient plan in a timely manner. In Plaintiff's view, she completed an adequate plan given a lack of specific direction regarding her performance deficiencies.

[8] As part of the 2015 review process, Plaintiff was also asked to complete a self-evaluation form. Plaintiff did not meet the original deadline set by Dr. Montgomery, and later submitted an incomplete form that did not contain numerical ratings in all categories.

Plaintiff provided. Dr. Samur was unhappy with and distrustful of Plaintiff's responses to his requests; however, some owners were also unhappy with Dr. Samur's behavior. In July 2016, Dr. Montgomery wanted to consider using a new computer software and asked Plaintiff to contact a representative of the software company. Dr. Montgomery became frustrated by what he perceived as Plaintiff's failure to follow through on his request, but the issue was ultimately resolved.

In 2014, Defendant had hired a consulting firm, Impact LLC ("Impact"), to help with leadership development and organizational improvements. The owners of Impact were Kathy Laster, Ph.D. and Cristina Filippo, Ph.D. Defendant's "goal was to improve the interactions and communications between the doctors and between the doctors and [Plaintiff]." *See* Searcey Aff. [Doc. No. 30-1], ¶ 4. Another purpose in hiring Impact was to help Plaintiff improve her performance.[9] Defendant later decided to work with Impact to implement a reorganizational plan known as OMA 2.0, under which Plaintiff's role was intended to evolve to a higher level so she could focus more on strategic planning and be less involved in day-to-day office management.

Some doctors became concerned that Plaintiff was resistant to some of the changes they wanted to implement through OMA 2.0. Drs. Cohenour, Searcey, and Montgomery

---

[9] Although Plaintiff attempts to dispute this fact, she cites deposition testimony of Dr. Laster stating that Impact was engaged to address organizational problems that included Plaintiff's performance issues. Also, the record demonstrates Impact's involvement in Plaintiff's performance reviews and the individual development plan (or IDP) following her 2014 review. *See* Def.'s Ex. 13 [Doc. No. 30-13] at 2, 3 (email from Plaintiff to Dr. Montgomery stating she had submitted her IDP to Dr. Filippo), 5, 7 (email from Dr. Montgomery to Plaintiff stating they had discussed her IDP with Impact).

met with Dr. Laster and Dr. Fillipo to discuss this concern. In the summer of 2016, all of the doctors met with Dr. Laster to discuss Plaintiff's performance and her ability to accomplish the plan. The doctors asked Dr. Laster to provide an opinion, based on her experience in working with Plaintiff, of whether Plaintiff was capable of making the changes they envisioned and accomplishing the goals of OMA 2.0. Dr. Laster gave a negative answer, informing them that Plaintiff had not responded well to coaching efforts and Dr. Laster did not believe Plaintiff would make further progress.[10] The doctors concurred in this opinion and decided not to renew Plaintiff's contract. Also, Dr. Samur had formed a lack of trust in Plaintiff.[11]

The doctors also consulted Impact about replacing Plaintiff, and accepted Impact's advice to rename the position from practice administrator to practice executive (to better express the role envisioned by OMA 2.0), and to increase the compensation in order to attract a higher level candidate. In deciding to hire Plaintiff's replacement, Stuart Skelton, and electing to give him a higher salary and better benefits, Defendant states that the doctors considered Mr. Skelton's prior management experience. Plaintiff disputes that his management experience was superior to hers, or that his credentials satisfied the published job description for the position. Plaintiff presents evidence to show that Mr. Skelton was a friend of one of the doctors, Dr. McIntire, who recommended him for the position, that

---

[10] Although Plaintiff attempts to challenge the validity of Dr. Laster's opinion, it is undisputed that Dr. Laster communicated to the doctors a negative opinion of Plaintiff.

[11] Plaintiff attempts to challenge the validity of Dr. Samur's opinion by showing it was unfounded or unwarranted, but it is undisputed that Dr. Samur expressed distrust of Plaintiff.

9

Impact interviewed Mr. Skelton and recommended his hiring "with reservation" (*see* Laster Dep. 95:16-96:2), and that Mr. Skelton was the only candidate interviewed. Plaintiff also presents evidence to show that her predecessor in the position, Steve Dodge, received a higher salary than she did.

Plaintiff counters Defendant's evidence of negative incidents and opinions regarding her performance, with facts to show that being practice administrator for Defendant was a difficult job and that she had accomplished many positive changes during her tenure and, in many respects, had performed the job well. Plaintiff also presents evidence to show that a 21-year-old female employee who got into legal trouble and missed work was not disciplined and is still employed, even though she also had a problem passing a job-related certification test. Plaintiff presents evidence to show that Dr. McIntire engaged in unprofessional behavior with some of his female employees. Finally, Plaintiff presents evidence to show that OMA 2.0 was never fully implemented and Mr. Skelton was not required to meet with Impact's principals and was not subjected to coaching by them (as she was).[12]

## Discussion

**A.     Age Discrimination**

    **1.     Prima Facie Case**

The Supreme Court held in *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 180 (2009), that an ADEA plaintiff must prove that "age was the 'but-for' cause of the

---

[12] Additional facts that are relevant only to Plaintiff's remaining breach of contract claim are presented in the discussion of that discrete issue, *infra*.

challenged adverse employment action," not merely a motivating factor as required under Title VII. The Court did not address the effect of its holding on the *McDonnell Douglas* burden-shifting analysis in an ADEA case, except to observe in a footnote that it "has not definitively decided whether the evidentiary framework of *McDonnell Douglas* . . . utilized in Title VII cases is appropriate in the ADEA context." *Gross*, 557 U.S. at [2349] n. 2. Although this "created some uncertainty regarding burden-shifting in the ADEA context," the Tenth Circuit has concluded that "it does not preclude our continued application of *McDonnell Douglas* to ADEA claims." *Jones v. Okla. City Pub. Schs.*, 617 F.3d 1273, 1278 (10th Cir. 2010); *see DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 968 n.16 (10th Cir. 2017).

"To establish a prima facie case for age discrimination, the plaintiff must prove that he was (1) within the protected class of individuals 40 or older; (2) perform[ing] satisfactory work; (3) terminated from employment; and (4) replaced by a younger person." *Wilkerson v. Shinseki*, 606 F.3d 1256, 1266 (10th Cir. 2010); *accord Adamson v. Multi Cmty. Diversified Servs. Inc.*, 514 F.3d 1136, 1146 (10th Cir. 2008). The younger person need not be outside the protected group, that is, less than 40 years of age. *See O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312 (1996); *Adamson*, 514 F.3d at 1146. "Although the 'articulation of the plaintiff's prima facie test might vary somewhat depending on the context of the claim,' '[t]he critical prima facie inquiry in all cases is whether the plaintiff has demonstrated that the adverse employment action occurred under circumstances which give rise to an inference of unlawful discrimination.'" *DePaula*, 859 F.3d at 969-70 (quoting *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1227 (10th

11

Cir. 2000) (internal quotation omitted)); *accord Plotke v. White*, 405 F.3d 1092, 1100 (10th Cir. 2005).

In this case, there is no question Plaintiff was a member of the protected over-40 age group and her employment was terminated; Defendant does not dispute that she was qualified for her position and generally performing satisfactory work. Defendant does dispute, however, whether Plaintiff can satisfy the fourth element of her *prima facie* case. Defendant argues that Plaintiff was replaced by a 50-year-old person only eight years younger than herself, and that this age difference is insufficient to create an inference of age-based decision making.

Upon consideration, the Court finds that Plaintiff has made a *prima facie* showing of age discrimination in the termination of her employment. The Court rejects Defendant's position that no inference of age discrimination arises from the fact that Plaintiff's replacement was younger because, at 50 years old, Mr. Skelton was "insignificantly younger" or not "substantially younger." *See O'Connor*, 517 U.S. at 313; *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1167 n.4 (10th Cir. 1998). In *Whittington v. Nordam Group Inc.*, 429 F.3d 986, 996 (10th Cir. 2005), the court of appeals declined to adopt even a "five-year rule" and held that age discrimination could reasonably be inferred from the five-year age gap in that case (from 62 to 57 years). Similarly, in this case, the Court declines to rule that the eight-year age gap (from 58 to 50 years) is insubstantial or insignificant. Therefore, Defendant has not shown its entitlement to summary judgment based on Plaintiff's inability to establish a *prima facie* case of age discrimination.

## 2. Pretext

Defendant asserts that Plaintiff lacks sufficient evidence to show its stated reasons for not renewing her contract are pretextual. Defendant relies on the undisputed facts that the decision was reached by a consensus of the owner-doctors (all of whom were at least 40 years old) upon the advice of an independent consulting firm (whose principal was also over-40 years of age) that had been hired by Defendant to improve its practice administration and had been working with Plaintiff to implement changes. Defendant asserts that Plaintiff lacks sufficient evidence to undermine its legitimate non-discriminatory reasons for the decision to replace her with a new practice executive.

"A plaintiff may show pretext by demonstrating that the 'proffered reason is factually false,' or that 'discrimination was a primary factor in the employer's decision.'" *DePaula*, 859 F.3d at 970 (quoting *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1218 (10th Cir. 2013), and *Foster v. Mountain Coal Co.*, 830 F.3d 1178, 1194 (10th Cir. 2016)). Pretext may be inferred from "weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered reason, such that a reasonable factfinder could deem the employer's reason unworthy of credence." *Tabor*, 703 F.3d at 1216 (internal quotations omitted); *accord DePaula*, 859 F.3d at 970; *see Foster*, 830 F.3d at 1194; *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1038-39 (10th Cir. 2011). "In determining whether the proffered reason for a decision was pretextual, we examine the facts as they appear to the person making the decision," and "do not look to the plaintiff's subjective evaluation of the situation." *C.R. England*, 644 F.3d at 1044 (citations and internal quotations omitted); *accord DePaula*, 859 F.3d at 971. "Evidence that the employer 'should not have

made the termination decision – for example, that the employer was mistaken or used poor business judgment – is not sufficient to show that the employer's explanation is unworthy of credibility.'" *DePaula*, 859 at 970-71 (quoting *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1169-70 (10th Cir. 2007)). "[T]he relevant inquiry is whether the employer 'honestly believed those reasons and acted in good faith upon those beliefs.'" *Id.* at 971 (quoting *Swackhammer*, 493 F.3d at 1170) (internal quotations omitted); *see also Young v. Dillon Co.*, 468 F.3d 1243, 1250 (10th Cir. 2006) ("the relevant 'falsity' inquiry is whether the employer's stated reasons were held in good faith at the time of the discharge").

Upon consideration of the facts and evidence in the light most favorable to Plaintiff, as required by Rule 56, the Court finds that Plaintiff has failed to show inconsistencies or weaknesses in Defendant's explanation of the decision not to renew her employment contract. Plaintiff focuses much of her effort to demonstrate a factual dispute on presenting facts and evidence to show that she was doing an acceptable job in many respects, and that the OMA 2.0 plan was poorly defined and not well implemented. Accepting Plaintiff's presentation of facts as true, a reasonable fact finder could conclude that Plaintiff's perceived resistance to, or unsatisfactory performance of, the plan was not really her fault, and the goals of the plan were not accomplished any better after she left. However, Plaintiff presents no facts from which to reasonably infer that the opinions of Impact's principals and the decision-making doctors were not sincerely held.

Plaintiff also does not present facts that suggest the decision to end her contract was actually motivated by her age. Plaintiff includes in her statement of facts evidence that one

of the doctors made an ageist remark about another employee, and she states that Defendant terminated two other over-50 workers. Plaintiff makes no effort, however, to connect the remark to Defendant's decision regarding her employment, and she presents no record support for the other allegations. Plaintiff does present facts to show Defendant gave preferential treatment to younger employees, but in her argument regarding pretext, she does not contend these facts create an inference of age discrimination. This omission is consistent with governing legal principles; to be relevant, different treatment must be directed at a comparably situated employee. *See McGowan v. City of Eufala*, 472 F.3d 736, 745 (10th Cir. 2006); *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997). Plaintiff states that the younger employees were dental or surgical assistants; she does not contend they were comparators.

In summary, on the record presented, no jury could reasonably conclude that Defendant's asserted reasons for the decision to end Plaintiff's employment as its practice administrator were pretextual or age-related. The Court finds that Plaintiff has failed to demonstrate the existence of a genuine dispute of material fact regarding her claim of age discrimination.

Therefore, the Court finds that Defendant is entitled to summary judgment on Plaintiff's age discrimination claim.

**B.     Gender Discrimination**

For similar reasons, the Court finds that Plaintiff has failed to demonstrate a genuine dispute of fact relevant to the issue of whether Defendant's stated reasons for terminating her employment were a pretext for gender discrimination. The only additional facts

15

presented by Plaintiff to show that gender played a part in the decision not to renew her contract are the facts that her male predecessor and her male successor in the position both received higher salaries and better benefits than she did. *See* Pl.'s Resp. Br. at 27-28. Although these facts might be relevant to a disparate pay claim, Plaintiff does not provide any facts that might link Defendant's compensation decisions to its decision not to retain Plaintiff as its practice administrator. Further, Plaintiff has presented facts to show that she was better qualified than her replacement, Mr. Skelton, but she does not explain how his subsequent hiring bears on Defendant's decision to end her employment. Thus, no reasonable fact finder could infer from Plaintiff's additional facts that Defendant's termination decision was motivated by her female gender.

For these reasons, the Court finds that Defendant is entitled to summary judgment on Plaintiff's gender discrimination claim.

## C. Breach of Contract

Plaintiff asserts a claim under Oklahoma law that Defendant breached the Contract by failing to pay her for unused vacation (or PTO) following her termination "in the approximate amount of $32,000." *See* Pet. [Doc. No. 1-1] ¶ 31.[13] The evidence shows, and Plaintiff concedes, that she was paid for 160 hours (equal to four 40-hour weeks) of

---

[13] Plaintiff also alleges in her pleading that Defendant breached the Contract by not paying her for a three-month period of additional salary and "vested benefits in the approximate amount of $16,000." *Id*. The salary claim is addressed in this Order at page 3-4, *supra*, and the Order of September 4, 2018 [Doc. No. 43]. The parties do not mention in their briefs any other benefits. The Court's examination of the Contract reveals the only other benefit provisions concern reimbursement of expenses and continuing education costs (not exceeding $2,500 per year). *See* Contract, ¶¶ 5.2, 5.4. By Plaintiff's silence in response to the Motion seeking judgment on all claims, the Court finds this part of her breach of contract claim has been abandoned or withdrawn.

PTO when her Contract was not renewed. The Contract entitled Plaintiff "to four (4) weeks of paid vacation in each calendar year . . . , which vacation shall be taken at times consistent with the performance by [Plaintiff] of her obligations hereunder." Contract, ¶ 5.3. The question presented is whether Plaintiff could carry over unused PTO from one calendar year to the next, and receive payment for all accrued PTO (without any maximum limit) upon separation from employment.

The Contract is silent concerning these matters. While Defendant had an employee handbook that addresses them (limiting carry over of unused PTO to 80 hours per year and authorizing payment for a maximum of 216 hours of unused PTO upon separation), Plaintiff takes the position that the handbook did not apply to her because it governed only hourly employees and the Contract controlled her PTO rights. *See* Pl.'s Resp. Br. at 18. Plaintiff relies for her entitlement to accrue PTO beyond a contract period and carry over unused PTO from one calendar year to the next (without a maximum limit) on documents she created during her employment. For purposes of summary judgment, Defendant does not challenge the authenticity of these documents or Plaintiff's authority to formulate a carryover policy for salaried workers. The documents do not address, however, the issue of payment for unused, accrued PTO upon termination of a salaried employee or nonrenewal of an employee's contract. Instead, Plaintiff relies for her right to payment on Defendant's past practices regarding other salaried, terminated employees.

The Contract contains an integration clause that provides, in pertinent part: "This Agreement and its attachments contain and constitute the entire agreement between and among the parties herein and supersedes all prior agreements and understandings between

17

the parties hereto relating to the subject matter hereof." *See* Contract, ¶ 8.3. The Contract also provides: "This Agreement may only be amended by a writing executed by each of the parties hereto." *Id*. ¶ 8.8. Plaintiff does not contend the Contract was amended in the manner required by this provision.

Under Oklahoma law, the parol evidence rule – which "is not a rule of evidence but is instead a rule of substantive law" – prevents the use of factual matter "that seeks to vary, contradict or add to an integrated agreement." *First Nat'l Bank v. Honey Creek Entm't Corp.*, 54 P.3d 100, 103-04 (Okla. 2002). Also, although parol evidence "cannot vary, modify or contradict the terms of the instrument, it is admissible to explain the meaning of words when there is a latent ambiguity in the written text of the agreement." *Mercury Inv. Co. v. F.W. Woolworth Co.*, 706 P.2d 523, 529 (Okla. 1985). "But where a contract is complete in itself and, as viewed in its entirety, is unambiguous, its language is the only legitimate evidence of what the parties intended." *Id*. (emphasis omitted).

In this case, Plaintiff does not point to any ambiguity in the Contract, or present any legal theory that would allow the use of unwritten policies or unsigned documents to create contractual rights to additional compensation or severance payments. Therefore, upon consideration of the issues presented by the Motion, the Court finds that the Contract does not entitle Plaintiff to be paid upon termination for any unused PTO that had accrued in prior years and purportedly had been carried over to later contract periods.[14]

---

[14] Further, if consideration of extra-contractual matters were appropriate, the Court would find that Plaintiff has presented insufficient factual support to show Defendant had an established practice of paying salaried or contract-based employees for unused PTO upon termination. She cites only her own deposition testimony regarding a "three month's [sic] severance" payment (not

**Conclusion**

For these reasons, the Court finds that Plaintiff has failed to demonstrate a genuine dispute of material fact regarding her claims of age and gender discrimination and, thus, Defendant is entitled to summary judgment on Plaintiff's ADEA and Title VII claims. The Court further finds that Plaintiff has failed to substantiate her pendent claim of retaliatory discharge in violation of Oklahoma public policy, and summary judgment should be granted on this claim. Finally, the Court finds as a matter of law on the undisputed facts presented that Plaintiff was not entitled to be paid an additional amount for a three-month period of salary after the Contract ended or for accrued PTO in excess of the 4-week period provided by the Contract. Therefore, Defendant is also entitled to summary judgment on Plaintiff's breach of contract claim.

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment [Doc. No. 30] is GRANTED. A separate judgment shall be entered accordingly.

IT IS SO ORDERED this 20th day of November, 2018.

_____
TIMOTHY D. DEGIUSTI
UNITED STATES DISTRICT JUDGE

---

PTO) to her predecessor, Steve Hodge, and PTO payments to two women identified only by name. *See* Pl.'s Resp. Br. at 18, 30; Hubbard Dep. 80:6-82:3. These two names do not appear in the PTO accrual and carryover documents that Plaintiff prepared, and it is unknown whether they were salaried employees or had written contracts. As previously stated, the PTO policy in Defendant's employee handbook provided for payments of unused PTO to some employees upon separation.